Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)
Thomas E. Wheeler (SBN 308789)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com
twheeler@toddflaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK AUSSIEKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOLDWATER BANK, N.A.; DOES 1-10, Inclusive,<br><br>Defendant. | Case No. 2:22-cv-00851-MCE-DB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS....................................................................................2

    A. Plaintiff's Allegations..................................................................................2

    B. What Is an SMS Blaster?.............................................................................2

    C. What Is A Random or Sequential Number Generator?...............................4

III. LEGAL STANDARDS .......................................................................................6

IV. LEGAL ARGUMENT .........................................................................................6

    A. Plaintiff States A Claim Under The ATDS Provisions of the TCPA..........6

        1. Dismissing Plaintiff's Complaint Would Be Improper At The Pleadings Stage ...........................................................................................................9

    B. The Proper Course Of Action, Should The Court Grant Defendant's Motion, Is A Grant Of Leave To Amend ............................................................................11

V. CONCLUSION....................................................................................................11

# **TABLE OF AUTHORITIES**

Cases

*Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 743 (6th Cir. 2013) .................................................................................................. 19
*Atkinson v. Pro Custom Solar LCC*, No. SA-21-CV-178-OLG, 2021 WL 2669558 (W.D. Tex. June 16, 2021) ............................................................................................. 11
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 9
*Bell v. Portfolio Recovery Assocs., LLC*, No. 5:18-CV-00243-OLG, 2021 WL 1435264 (W.D. Tex. Apr. 13, 2021) ................................................................................ 11
*Callier v. GreenSky, Inc.*, EP-20-CV-00304-KC, 2021 WL 2688622 (W.D. Tex. May 10, 2021) ......................................................................................................................... 2
*Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622 (W.D. Tex. May 10, 2021) ............................................................................................................... 16
*Caplan v. Budget Van Lines, Inc.*, No. 220CV130JCMVCF, 2020 WL 4430966 (D. Nev. July 31, 2020) ............................................................................................................ 20
*Carl v. First Nat'l Bank of Omaha*, No. 2:19-CV-00504-GZS, 2021 WL 2444162 (D. Me. June 15, 2021) ...................................................................................................... 16
*Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012) ........................................ 22
*Coryell v. United States , Dep't of the Navy*, No. 218CV00593GMNNJK, 2019 WL 720972 (D. Nev. Feb. 20, 2019) ...................................................................................... 9
*Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) ........................................................................................................ 22
*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) ............................................... 1, 9, 13, 15
*Flores v. Adir International, LLC*, 685 Fed.Appx. 533, (9th Cir. March 24, 2017) .......... 10
*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................................ 23
*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ............................................ 20
*Garner v. Allstate Ins. Co.*, No. 20-C-4693, 2021 WL 3857786 at *4 (N.D. Ill. Aug. 30, 2021) ............................................................................................................................... 12
*Grome v. USAA Savings Bank*, No. 4:19-CV-3080, 2021 WL 3883713 (D. Neb. Aug. 31, 2021) ............................................................................................................................... 14
*Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623 (S.D. Cal. July 8, 2021) ................................................................................................................... 2
*Gross v. GG Homes, Inc.*, No. 3:21-CV-00271-DMS-BGS, 2021 WL 2863623 (S.D. Cal. July 8, 2021) ................................................................................................................. 11
*Huber v. Pro Custom Solar, LLC*, No. 3:19-CV-01090, 2020 WL 2525971 (M.D. Pa. May 18, 2020) ................................................................................................................ 22
*Jance v. Home Run Offer LLC*, No. CV-20-00482-TUC-JGZ, 2021 WL 3270318 (D. Ariz. July 30, 2021) ....................................................................................................... 11
*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ................................................................. 9

<->

*Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230 (D. Nev. 2009) ........................ 9
*Marriott v. National Mut. Cas. Co.*, 195 F.2d 462 (10th Cir. 1952) ................................ 20
*Miles v. Medicredit, Inc.*, No. 4:20-cv-01186 JAR, 2021 WL 2949565 (E.D. Mich. July 14, 2021) .................................................................................................................... 2
*Miles v. Medicredit, Inc.*, No. 4:20-CV-01186 JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021) .................................................................................................................. 11
*Montanez v. Future Vision Brain Bank, LLC*, No. 20-CV-02959-CMA-MEH, 2021 WL 1697928 (D. Colo. Apr. 29, 2021) ........................................................................ 11
*Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51, 58 (2nd Cir. 2017) ........... 20
*Robinson v. Midland Funding, LLC*, No. 10-CV-2261-MMA-AJB, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011) ........................................................................................ 22
*Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466 (S.D.N.Y. 2018) ............... 21
*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) .............................. 20
*Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907 (W.D. Mich. 2018) ....................... 20
*Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017) ............. 16, 20
*Vance v. Bureau of Collection Recovery LLC*, No. 10 C 6324, 2011 WL 881550, at *2 (N.D. Ill. Mar. 11, 2011) ........................................................................................ 12
*Weisbein v. Allergan, Inc.*, No. SACV200801FMOADSX, 2021 WL 1034979 (C.D. Cal. Mar. 16, 2021) ........................................................................................................ 22

Statutes

47 U.S.C. § 227 et. seq. ........................................................................................... 3, 19, 21

Other Authorities

7 F.C.C. Rcd. 8752 (F.C.C. September 17, 1992)) ............................................................ 14
Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1991, Testimony of Robert Bulmash ................................................ 15
*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014 (2003). .................................................. 14
In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559 (Jan. 4, 2008) .............................................................................. 16
*Webster's Ninth New Collegiate Dictionary* (1991) ................................................. 1, 9, 17

Regulations

47 C.F.R. §§ 64.1200 .......................................................................................................... 15
7 FCC Rcd. 8752 (F.C.C. September 17, 1992) .......................................................... 15, 19

I. **INTRODUCTION**

The Telephone Consumer Protection Act ("TCPA") forbids sending a text message with an automatic telephone dialing system ("ATDS") without the express written consent of the called party. Or at least, it did until *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), when the Supreme Court clarified that a random or sequential number generator must be used in the storing or the producing of the numbers to be called. Since *Duguid*, Courts have been left to determine whether the Supreme Court's interpretation of the TCPA means that only systems which dial **telephone numbers** randomly or sequentially qualify as an "automatic telephone dialing system" or whether per the plain definition of the statute it includes "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator" without requiring that the "random or sequential number generator" actually generate the phone numbers to be dialed. As cited in Defendant's Motion, Courts have basically come down two ways on this issue: it cannot be decided without a developed factual record and thus is inappropriate for a motion to dismiss; or there is no way to plausibly plead a TCPA claim anymore. The only appellate authority on the issue disagrees in the recent *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867 (3d Cir. 2022), which will be discussed more extensively below, but effectively states that "*Duguid* does not stand for the proposition that a dialing system will constitute an ATDS only if it actually generates random or sequential numbers" but instead on that "equipment's "capacity" to employ a random or sequential number generator . . . ." *Id.* at 875-76.

Plaintiff's allegations must be taken as true at this stage, as Plaintiff will not be able to demonstrate whether the code contains such number generators without discovery. Any system alleged to contain code like this meets the Supreme Court's test, because it has the capacity to produce and store random or sequential telephone numbers. This system is inapposite to the system used in *Duguid*, which was a text response system that triggered a message to be sent to a phone number on file for an account after a certain action was taken on Facebook's website. Defendant's SMS blasting platform was an

Automatic Telephone Dialing System as defined by 47 U.S.C. § 227(a)(1) as prohibited by 47 U.S.C. § 227(b)(1)(A).  This will be proven in discovery.  If Plaintiff is wrong, Defendant will prevail on summary judgment.  At this juncture, Plaintiff has alleged number generation, has presented a basis for this allegation, and even has presented code equivalent to what other similar dialers rely upon.

Consumer privacy is ebbing away day by day.  This case operates as a vehicle to prevent further erosion.  The motion is procedurally premature, as well as legally and factually incorrect, and should accordingly be denied in full.

## II.  STATEMENT OF FACTS

### A. Plaintiff's Allegations

Plaintiff has filed a class action alleging widespread violations by Defendant of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.  Plaintiff alleges Defendant sent him automated solicitation text messages with an intrusive SMS blasting platform, which qualifies as an automated telephone dialing system, to his cell phone. First Amended Complaint ("FAC"), Dkt. No. 4 ¶ 18, 20.  The system used to send messages was an SMS blasting platform, which sends generic impersonal template messages via automated dialing campaigns.  *Id*. at ¶ 21.  Plaintiff alleges that the SMS blasting platform utilized random or sequential number generators to store and produce telephone numbers.  *Id*. at ¶ 21.  Thus, Plaintiff alleges that Defendant's SMS blasts were sent using an ATDS as prohibited by 47 U.S.C. § 227(b)(1)(A).

### B. What Is an SMS Blaster?

An SMS blaster like the one used by Defendant to text Plaintiff utilizes campaigns, which are preprogrammed to store and produce telephone numbers to be called by the platform, much in the same way as a predictive dialer.  Predictive dialer functionality is described by the FCC.  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 ¶¶ 8 fn 31, 131, and 146 (2003) ("2003 FCC Order").

In plain English, the following is description of an SMS blaster typically operates:

1  A dialer operator accesses a database of consumer contact information, which is typically
2  contained in a text delimited file, either in a CSV file, text file, Microsoft Excel, or
3  Microsoft Access file.  In essence, this is a spreadsheet, containing rows and columns of
4  data, which includes telephone numbers.  The operator will load this data set into the
5  dialing platform, usually through an online web portal.  The dialing system will cut the
6  data set into individual lines, unique to each telephone number with an assigned row
7  using a parser.  A random or sequential number generator (typically sequential) will
8  generate numbers, and assign those numbers to the data, during a process called indexing.
9  The program will then "store" the data in a temporary cache or RAM memory location
10 accessible to the dialer.  A random or sequential number generator is simultaneously used
11 to select and produce the indexed telephone numbers to the dialer.  Once the number
12 generator corresponds to a matching number in the stored list, that telephone number will
13 be "produced" from storage to the dialer, which then automatically dials that telephone
14 number.  Thus, the system is literally both storing and producing telephone numbers to be
15 called by the campaign autodialing systems.  Storage and production occur automatically,
16 without any organic triggering event by a human.  The aforementioned process
17 determines which order and sequence the list of telephone numbers are to be stored,
18 produced, and automatically dialed, as well as the rate at which this process occurs.  This
19 same random or sequential number generator can similarly be used to generate random or
20 sequential telephone numbers to be dialed rather than being used to access data from a
21 list.

22      To illustrate this using a real-world example provided to undersigned counsel by a
23 software engineer fluent in Java who reviewed dialer code, imagine a list of numbers as a
24 lengthy sheet of lined notebook paper.  A parser cuts this into strips, and stores it in a
25 paper tray attached to a scanner.  Each strip of paper is assigned a row number, and a
26 telephone number.  The scanner uses a program to generate numbers, either sequentially
27 or randomly.  That generator is hooked to the paper feed, which instructs the scanner to
28 match the generated number, to the corresponding strip of paper in the tray, and then

produce that telephone number from the stored list through the scanner, and out the other side, at which time the scanner is dialing the telephone number on that strip of paper. Now imagine a scanner that accomplishes this with a tray containing thousands of pages of paper in the blink of an eye. Once the tray is empty, the dialing campaign is complete. The program for the dialing campaigns is pre-set like a sprinkler timer to dial the phone numbers at pre-set intervals and pre-set time periods. This process is sometimes referred to as algorithmic dialing. It is the same process by which predictive dialing campaigns are programmed, except that predictive dialers also account for a live person having to be connected after this occurs. Texts do not require this component and can be blasted out in higher volumes than predictive dialers.

### C. What Is A Random or Sequential Number Generator?

A random number generator or sequential number generator are common programming tools used by software engineers when designing computer software, to automate certain functions in certain ways that would otherwise need to performed by human hand. This term was not invented by Congress. It does not mean the same thing as "telephone number generation."[1] Any software engineer will agree. Number generators are a widely understood tool of software engineers. Lawyers, regulators and courts have bungled this over years of uninformed advocacy.

Undersigned counsel studied the code used to program SMS blasters with the assistance of software engineers fluent in Java and found they execute code that relies upon number generation to store and produce numbers to be called by the dialer. For instance, a common "parser" used in SMS blasting coding in an SMS blaster integrates

---

[1] The statutory text of 47 § 227(a)(1) states "The term "automatic telephone dialing system" means equipment which has the capacity— (A)to store or produce telephone numbers to be called, using a random or sequential number generator..." The use of the phrase "telephone numbers to be called" in the same code section as "number generator" and the key distinction between the term "telephone number" and "number" thereafter indicate that a number generator is not referring to a telephone number generator. Otherwise, the statute would have said "to store or produce telephone numbers to be called, using a random or sequential [telephone] number generator."

the open-source Apache code into its autodialing SMS blaster platform. These lines of code, and specifically the "++" in line 731, represent an operator token that generates sequential numbers as part of a loop. This loop is used to select which number from the CSV file, will be dialed, and produce that number to the dialer using a CSV parser. Such programs can dial thousands of consumers in mere seconds, without any human intervention, based on whatever parameters are targeted by the operator of the dialing platform. The sequential number generator in the code above is executed in the process of mass SMS blasting. The program cannot function, and therefore cannot dial any phone numbers at all, without executing such a sequential number generator.

     All SMS blasters rely on random or sequential number generators to instruct the data set to store and produce telephone numbers to the dialer. Without this key component, a dialing campaign would require an agent to manually place the call, via organic decision making, or as was the case in *Facebook*,[2] through some other organic one-to-one triggering event that instructs the dialer to place the call. <u>Plaintiff's allegations must be taken as true</u>. Plaintiff will not be able to demonstrate whether the SMS blasting system utilizes such random or sequential number generators without conducting discovery and obtaining the code for the dialing platform.

---

[2] In *Facebook*, that organic event was a human being trying to gain access to a user's Facebook account without authorization, and Facebook's system being programmed to notify the owner of the account when this happened. *Duguid* should never have been subject to an appeal, because the system unquestionably did not use random or sequential number generation. Just because a robot sent the message does not mean random or sequential number generation is involved. Robots can be programmed to complete isolated tasks by their operators upon the occurrence of an isolated organic triggering event. If there are a lot of organic triggering events, then this could optically appear to the untrained eye to be mass dialing, but it is not. The key distinction here is that the code in SMS blasters use number generation and dialing campaigns to decide who to dial, while the code in the *Facebook* platform does not and could never do so, and so it could never fit within the plain language definition of an ATDS under the statutory text. The platform used here sent out impersonal advertisements to Plaintiff and seemingly thousands of other individuals to solicit Defendant's services. Such system which "blasts" messages to many people necessarily uses a random or sequential number generator as alleged.

Defendant's Motion is premature. Based on detailed discussions with experts and years of litigation and expertise surrounding such technology, including having reviewed code of similar systems, Plaintiff, and his counsel, have a sufficient good faith basis to make these allegations, and assert that if the system is a traditional SMS blaster, then it will rely on this coding, which will execute number generators to store and dial telephone numbers, including the dialing of Plaintiff's phone number. And so, it follows that this is an issue best reserved for summary judgment, because Plaintiff's allegations fall squarely within what the Supreme Court said was an ATDS.

### III. LEGAL STANDARDS

A complaint need only "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss, the court construes the complaint in the light most favorable to the non-moving party, accepts all well-pled facts as true, and draws all inferences in the non-moving party's favor. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005); *see also Coryell v. United States, Dep't of the Navy*, No. 218CV00593GMNNJK, 2019 WL 720972, at *1 (D. Nev. Feb. 20, 2019). "A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct." *Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1233 (D. Nev. 2009).

### IV. LEGAL ARGUMENT

#### A. Plaintiff States A Claim Under The ATDS Provisions of the TCPA

*Facebook* does not hold that every TCPA case should be thrown out on the pleadings. All it says is that a dialing system must have the capacity to store or produce telephone numbers to be called, using a random or sequential number generators to be an ATDS, i.e. exactly what the plain language of the statute already says. It further contemplates that such number generators can be used to dial stored lists of telephone

numbers, because platforms like the one in this case literally "produce"[3] the telephone number from that list, to the dialer.[4] Plaintiff's Third Amended Complaint alleges facts which, when viewed, in the light most favorable to Plaintiff, plausibly suggest that Defendant contacted her on his cellular telephone through the use of an ATDS under the interpretation given by the Supreme Court's *Facebook* decision, including because the text blasting system Defendant uses has the capacity to text sequentially generated telephone numbers. Accordingly, Plaintiff requests that this Court deny Defendant's Motion to Dismiss and to allow Plaintiff to seek written discovery regarding the exact specifications of the dialing system.

The Third Circuit came to this exact same conclusion regarding the actually narrowed issues decided in *Duguid* in the recent decision of *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867 (3d Cir. 2022). In *Panzarella*, the Third Circuit noted that the Supreme Court was only addressing the narrow issue of whether random or sequential number generator modified both produce and store instead of only one:

> "Although the Court restated the full ATDS definition—including "capacity"—when it summarized its holding, 141 S. Ct. at 1168; *id.* at 1173 ("We hold that a necessary feature of an [ATDS] under § 227(a)(1)(A) is the *capacity* to use a random or sequential number generator to either store or produce phone numbers to be called." (emphasis added)), in other places, it described the ATDS definition in terms of the "use" of a random or sequential number generator, *e.g., id.* at 1170 ("In sum, Congress' definition of an autodialer requires that in all

---

[3] Miriam Webster's Dictionary's first definition of "Produce" is "to offer to view or notice." See https://www.merriam-webster.com/dictionary/produce; *See also Webster's Ninth New Collegiate Dictionary*, 938 (1991) (same).

[4] Undersigned counsel filed an Amicus Brief in *Facebook* about predictive dialers. The Supreme Court had the opportunity to subsequently address predictive dialers but chose to not do so. This is important because predictive dialers, like SMS blasters, store telephone numbers to be produced and thereafter dialed automatically by a campaign at a later time, using random or sequential number generators. SMS blasters and predictive dialers are programmed in a virtually identical fashion. This is why many dialer companies offer both predictive dialer and SMS blasting options with their platforms. They rely on the same integrated code to operate.

cases, whether storing or producing numbers to be called, the equipment in question must *use* a random or sequential number generator." (emphasis added)); *id.* at 1171 ("The statutory context confirms that the autodialer definition excludes equipment that does not '*us*[*e*] a random or sequential number generator.' " (emphasis added) (quoting § 227(a)(1)(A)). Yet, these inconsistent statements, in their context, say nothing about whether an ATDS must *use a random or sequential number generator* or *have the capacity to use a random or sequential number generator.* Indeed, this issue was not even before the Court. *Id.* at 1168 (viewing the issue before it as limited to resolving the circuit split regarding whether "using a random or sequential number generator" modified "produce" but not "store"). Rather, the Court employed this language to explain that "using a random or sequential number generator" modifies "store" and "produce."[8] That was the issue before it. *See Borden v. United States*, —— U.S. ——, 141 S. Ct. 1817, 1833 n.9, 210 L.Ed.2d 63 (2021) (plurality opinion) (" '[T]he language of an opinion,' we have stated, 'is not always to be parsed as though we were dealing with the language of a statute.' And that is most obviously true when an opinion's language revises (for easier reading) the statute's own. Better to heed the statutory language proper." (alteration in original) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979))). Therefore, *Duguid* does not stand for the proposition that a dialing system will constitute an ATDS only if it actually generates random or sequential numbers.

37 F.4th at 875 (footnotes removed). Thus, "under section 227(a)(1), whether "equipment" qualifies as an ATDS turns on that equipment's "capacity" to employ a random or sequential number generator to store or produce telephone numbers, not its actual use of a such a generator. [] We have held that, for a dialing system to qualify as an ATDS, it need only have the "present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers." *Id.* at 876.

Here, Defendant used a SMS blasting platform to blind text Plaintiff a solicitation.

8
PLF'S OPP. TO DEF.'S MTD

As noted above, such platforms are based on code which has the capacity to send text messages to random or sequentially generated telephone numbers, irrespective of whether it was actually used in such a manner. The definition is about <u>capacity</u> not actual use of such generating function. Just because Defendant used a blasting system to text Plaintiff from a list (presumably) does not mean that the blasting system does not plausibly have the capability to text random or sequentially generated phone numbers.

Without the benefit of discovery, Plaintiff can only plead facts based upon personal knowledge of the texts he received, along with work product from his counsel as to the functionality and coding of other similar dialing platforms that facially operate in the same manner. In order to truly evaluate Plaintiff's claims, an analysis of the dialing system is crucial. Accordingly, conclusions regarding Plaintiff's TCPA claims are more appropriately drawn at summary judgment, after discovery regarding the specifications of the dialer. Courts that dismissed similar claims filed by undersigned counsel have had their decisions reversed, even where less detail was pled. *Flores v. Adir International, LLC*, 685 Fed.Appx. 533 (9th Cir. March 24, 2017). The same result would occur here if Defendant has its way.

The clear allegations in the Complaint would have to be entirely ignored to side with Defendant. Plaintiff requests the Court deny Defendant's Motion to Dismiss.

**1. Dismissing Plaintiff's Complaint Would Be Improper At The Pleadings Stage**

Plaintiff has not had the opportunity to engage in discovery, without which it is difficult to discern what Plaintiff could allege in support of her ATDS claims, aside from her experiences receiving Defendant's texts. Those experiences informed Plaintiff's understanding of how Defendant solicits consumers. Plaintiff anticipates gathering further information about the dialing platform in discovery, which would narrow the issues in dispute.

A survey of post- *Facebook* decisions shows that district courts consistently favor allowing plaintiffs to proceed with discovery over dismissing their claims at the pleadings

stage.[5]  Recently, an Illinois court held that an allegation that the defendant used a predictive dialer to autodial their phone without consent was sufficient at the pleadings to survive a motion to dismiss, because the coding and intricacies of the dialing system would not be readily apparent to a consumer, and it was reasonable to infer that such a system used random or sequential number generators to store or dial telephone numbers. *Garner v. Allstate Ins. Co.*, No. 20-C-4693, 2021 WL 3857786 at *4 (N.D. Ill. Aug. 30, 2021) (citing *Vance v. Bureau of Collection Recovery LLC*, No. 10 C 6324, 2011 WL 881550, at *2 (N.D. Ill. Mar. 11, 2011)).  The same logic applies to SMS blasters, which

---

[5] *See Miles v. Medicredit, Inc.*, No. 4:20-CV-01186 JAR, 2021 WL 2949565, at *4 (E.D. Mo. July 14, 2021) ("Additional factual details about Medicredit's dialer…might be helpful but are not required at the pleading stage […] the Court finds Plaintiff has pled enough facts to proceed with discovery, at which time he will have the opportunity to discover the precise technology that was used at the time of the alleged TCPA violations"); *Bell v. Portfolio Recovery Assocs., LLC*, No. 5:18-CV-00243-OLG, 2021 WL 1435264, at *1, fns. 4-5 (W.D. Tex. Apr. 13, 2021) ("the Court believes that any resolution of dispositive motions in this case will almost certainly involve some analysis regarding the capabilities of the device in question…"); *Montanez v. Future Vision Brain Bank, LLC*, No. 20-CV-02959-CMA-MEH, 2021 WL 1697928, at *7 (D. Colo. Apr. 29, 2021) ("While the Supreme Court's decision elucidates the definition of an ATDS, that holding will prove far more relevant on a future motion for summary judgment than it does now."); *Gross v. GG Homes, Inc.*, No. 3:21-CV-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021) ("Plaintiff need not include additional details concerning the process by which Defendant's device stores and produces phone numbers. Plaintiff need not describe the technical details of Defendant's alleged ATDS at this stage. The issue is appropriately addressed following discovery and on a motion for summary judgment."); *Atkinson v. Pro Custom Solar LCC*, No. SA-21-CV-178-OLG, 2021 WL 2669558, at *1 (W.D. Tex. June 16, 2021) ("As a practical matter, no plaintiff will have personal knowledge of the defendant's telephone system at the pleadings stage. Only the defendant has that knowledge. However, Plaintiff had pled enough facts to proceed with discovery…"); *Jance v. Home Run Offer LLC*, No. CV-20-00482-TUC-JGZ, 2021 WL 3270318, at *3 (D. Ariz. July 30, 2021) ("whether a defendant has an ATDS is often a fact exclusively within the defendant's possession…courts have acknowledged the difficulty a plaintiff faces in pleading the existence of such a system with specificity because it is a factual question that is not properly resolved without formal discovery or at this stage of the proceedings.") (internal quotations and citations omitted).

operate in a nearly identical fashion and rely on similar code as predictive dialers to store and produce telephone numbers to be called. These courts are following the correct procedure of the Federal Rules. Defendant invites the Court to commit procedural error.

### B. The Proper Course Of Action, Should The Court Grant Defendant's Motion, Is A Grant Of Leave To Amend

Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant leave to amend freely "when justice so requires." The Supreme Court has stated that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Review of denial of leave to amend is strictly reviewed in light of the strong policy permitting amendment. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991). To the extent the Court views that Plaintiff has not adequately alleged the capacity of the system, Plaintiff requests leave to amend to add this additional allegation. Plaintiff will allege that mass text blasting platforms, such as the one used by Defendant as evidenced by the impersonal message received by Plaintiff, use random or sequential number generators to access and dial telephone numbers to be dialed from stored lists. Plaintiff will additionally allege that such random or sequential number generators have the capability to be used to directly generate telephone numbers to be dialed, such that the system has the capacity to produce or store random or sequential numbers and dial those numbers even if such capacity was not directly used in the messages sent to Plaintiff. If the Court agrees with *Panzarella* that "whether 'equipment' qualifies as an ATDS turns on that equipment's 'capacity' to employ a random or sequential number generator to store or produce telephone numbers, not its actual use of such a generator," then such amendment will not be futile.

### V.   CONCLUSION

Plaintiff respectfully request the Court deny Defendant's Motion in full. To the extent the Court grants the Motion, Plaintiff respectfully requests leave to add the two specific allegations referenced in the preceding section.

Dated:  August 22, 2022          LAW OFFICES OF TODD M. FRIEDMAN P.C.


By:   /s/ *Todd M. Friedman*
Todd M. Friedman, Esq.
*Attorneys for Plaintiff*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On December 22, 2021, I served true and correct copies of the following document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 22, 2022, at Los Angeles, California.

*s/ Todd M. Friedman*
Todd M. Friedman